**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| ASHTON POLLEY,<br><br>Plaintiff,<br><br>v.<br><br>CASEY KOVENER-ELKINS Individually,<br>ELKINS & ASSOCIATES LLC,<br>KOVENER & ASSOCIATES REAL ESTATE Trade Name,<br><br>Defendants. | ) | Case No. 4:25-cv-00226-TWP-KMB |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss (Dkt. 23) filed by Defendants Casey Kovener-Elkins ("Kovener-Elkins"), Elkins & Associates LLC ("Elkins & Associates"), and Kovener & Associates Real Estate (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). *Pro se* Plaintiff Ashton Polley ("Polley") pursues this action against Defendants alleging minimum wage and retaliation claims under the Fair Labor Standards Act ("FLSA"), as well as claims under Indiana's Wage Payment Act, Ind. Code § 22-2-5-1 *et seq.*, and the equitable doctrine of Quantum Meruit (Dkt. 20). For the following reasons, Defendants' Motion is **granted in part** and **denied in part**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of Polley as the non-moving party. See *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Defendant Kovener-Elkins is the sole owner of Elkins & Associates, a real estate business located in Indiana (Dkt. 20 ¶¶ 10, 15). Defendant Kovener & Associates Real Estate is a trade name and business identity used by Defendants in connection with their real estate operations. *Id.* ¶ 12. From October 2018 until September 2025, Polley performed services for the Defendants on a regular and ongoing basis. *Id.* ¶¶ 14–16. These services included tasks related to the Defendants' real estate business, such as installing and removing signs, placing and receiving lockboxes, delivering documents, conducting on-site checks, and acting as an on-site representative for the Defendants with various third parties. *Id.* ¶ 15. Defendants required Polley to perform these services personally, and he was not allowed to delegate his work to others. *Id.* ¶ 19.

Polley routinely worked approximately ten to twenty hours per week for the Defendants. *Id.* ¶ 27. However, his hours fluctuated depending on Defendants' needs and his assignments. *Id.* It was expected that Polley would remain available to respond promptly to Defendants' calls and messages in case there was an assignment. *Id.* ¶ 28. Polley did not operate an independent business related to the services he performed for the Defendants, nor did he advertise his services to the general public or have other clients. *Id.* ¶¶ 17–18.

The Defendants compensated Polley exclusively through mileage-based payments and did not compensate him for the time he spent on standby. *Id.* ¶¶ 25, 28. In the course of his work, Polley incurred vehicle-related expenses such as fueling, maintenance, deprecation, and wear and tear. *Id.* ¶ 26. After accounting for vehicle-related business expenses, Polley's net pay was consistently below the federal minimum wage for workweeks when he performed services, except for some portions of 2019. *Id.* ¶¶ 29–30.

During their working relationship, Kovener-Elkins had final authority over Polley's classification, method of compensation, and assignments. *Id.* ¶ 22. Kovener-Elkins personally

determined various aspects of Polley's work, including assigning his tasks, setting travel requirements and job priorities, and directing his interactions with third parties. *Id.* ¶ 21. Kovener-Elkins explained to Polley that she—not any accountant or other third party—made the decisions regarding Polley's working relationship and pay practices. *Id.* ¶ 23.

Defendants failed to maintain accurate records of Polley's work hours, which caused Polley to dispute their pay practices and his classification. *Id.* ¶ 33. He submitted a W-4 in an effort to correct his wages and tax status. *Id.* Shortly after he took these actions, the Defendants reduced the number of assignments they provided to Polley, delayed and withheld payments to him, and eventually stopped providing him work. *Id.* ¶ 34. Following the end of the parties' working relationship, Polley sought unemployment benefits through the Indiana Department of Workforce Development, and the agency determined that Polley was an employee based on Indiana's economic realities framework. *Id.* ¶¶ 36, 37.

Polley initiated this action on November 17, 2025 (Dkt. 1). On January 30, 2026, the Defendants filed their first Motion to Dismiss for failure to state a claim (Dkt. 18). In February 2026, Polley filed the operative Amended Complaint (Dkt. 20). Defendants soon filed an Answer to Polley's Amended Complaint (Dkt. 22) and the instant Motion to Dismiss (Dkt. 23). Polley filed a Response (Dkt. 25), and Defendants elected not to file a Reply. The Motion is ripe for the Court's consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski,* 550 F.3d at 633.

However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"A [Rule 12(b)(6)] motion filed after an answer has been filed is to be treated as a 12(c) motion for judgment on the pleadings and can be evaluated under the same standard as a Rule 12(b)(6) motion." *McMillan v. Collection Pros., Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 718 (7th Cir. 2011) ("The defendants styled [the motions] Rule 12(b)(6) motions, but in reality the motions were for judgment on the pleadings, Fed. R. Civ. P. 12(c), because the defendants filed answers . . . . The misstyling does not alter our analysis."). Because Defendants filed an Answer before filing their separate 12(b)(6) Motion to

Dismiss, their 12(b)(6) Motion to Dismiss is treated as a 12(c) Motion for Judgment on the Pleadings, but the Court still utilizes the same standards governing 12(b)(6) motions.

*Pro se* complaints such as that filed by Polley are "to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

## III. DISCUSSION

Polley asserts four claims in his *pro se* Amended Complaint: Count I: FLSA Minimum Wage violations; Count II: FLSA Retaliation; Count III: Indiana Wage Payment Act violations, and Count IV: Quantum Meruit/Unjust Enrichment (Dkt. 20). The Defendants argue that Counts I and II should be dismissed because Polley fails to plead sufficient facts setting forth FLSA violations, and in the absence of these federal claims, this Court does not have jurisdiction over the state law claims, so those claims should also be dismissed. Polley asserts that his Amended Complaint is sufficient but requests leave to amend if the Court deems it insufficient. The Court will address each claim in turn.

### A. Count I: FLSA Minimum Wage

The FLSA requires employers to pay their employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). When determining whether an employer has complied with this requirement, courts adopt the per-workweek measure. *See Hirst v. Skywest, Inc.*, 910 F.3d 961, 965–966 (7th Cir. 2018). To sufficiently plead a minimum wage claim under the FLSA against the Defendants, Polley must show that (1) he is covered under the FLSA, (2) he is an employee of the Defendants, and (3) there was at least one given workweek in which he was not paid minimum wage. *Delgado v. Directv, Inc.*, 14-cv-01722, 2016 WL 1043725, at *6 (S.D. Ind. Mar. 16, 2016). As noted above,

the parties dispute whether Polley has sufficiently shown that he was an employee and that there was at least one given workweek in which he was not paid minimum wage.

### 1. Employee Status

Under the FLSA, the term "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Subject to certain exceptions, "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1).

Defendants contend that Polley does not allege sufficient facts to establish an employment relationship based on the definition under the FLSA and the economic realities of the situation (Dkt. 24 at 7–9). They argue that the Amended Complaint alleges conclusory statements to support a claim that Polley was an employee rather than an independent contractor and that Polley has not shown that he was an employee, so he was not protected under the FLSA. *Id.* at 8–9.

In response, Polley argues that he has pleaded factual allegations, not mere legal conclusions, which show that he was an employee under the economic realities of the situation (Dkt. 25 at 2). He contends that Defendants' disagreement with those allegations is not a pleading deficiency, but a factual dispute among the parties. *Id.*

The terms "employer" and "employee" are broadly defined in the FLSA "and do not clarify how to address 'problems as to the limits of the employer-employee relationship under the Act.'" *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)). These terms should be construed expansively. *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018). In addition, courts consider the "'economic reality of the working relationship' to determine who is an employee covered by the FLSA." *Brant*, 43 F.4th at 665 (quoting *Simpkins*, 893 F.3d at 964).

Defendants and Polley both cite the multi-factor test announced by the Seventh Circuit in *Secretary of Labor, U.S. Department of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987) (Dkt. 24 at 8; Dkt 25 at 2). Under this test, courts consider the following factors:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanency and duration of the working relationship;
>
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Lauritzen*, 835 F.2d at 1535. The Seventh Circuit makes clear that no single factor is necessarily controlling, and courts should make a determination based on the totality of the circumstances. *Brant*, 43 F.4th at 665. When reviewing the factors, courts consider how dependent a worker is on the alleged employer. *See id.* The greater level of dependence, the more the test "weigh[s] in favor of an employer-employee relationship." *Id.*

Although Defendants cite the above test, they do not engage in meaningful analysis of the individual factors (Dkt. 24 at 8). Instead, they merely argue that the Amended Complaint provides conclusory statements and fails to provide factual material to show that Polley is an employee. *Id.* Polley argues that the Amended Complaint does provide factual material and cites specific facts that correspond with the *Lauritzen* factors (Dkt. 25 at 2). The Court agrees with Polley and addresses each factor in turn.

**a. <u>Control</u>**

The first factor—control and supervision—is the most important. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448–49 (citing *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702–03 (7th Cir. 2015)). This factor generally accounts for the defendant's "control over the result of the work" and "the details by which it is achieved," but "key powers evincing control are the right to hire and fire the plaintiff." *Id.* at 449.

First, the Court looks to the nature and degree of the Defendants' control over the way Polley performed his work. One way to look at this factor is to ask "whether the worker has control over such a meaningful portion of his labor that he operates as a separate economic entity, i.e., as an independent contractor." *Brant*, 43 F.4th at 666.

Multiple facts show that the Defendants, rather than Polley, had control over the way that Polley performed his work. Kovener-Elkins "assigned [Polley's] tasks, determined where and when [Polley] traveled, set job priorities, and directed [Polley's] interactions with third parties." (Dkt. 20 ¶ 21). Additionally, Polley "was required to perform work personally and could not delegate tasks to others." *Id.* ¶ 19. Taken together, these facts show that the Defendants exerted control over Polley. This factor weighs in favor of employee status.

**b. <u>Opportunity for Profit or Loss</u>**

This factor "gets to the heart of the economic relationship." *Brant*, 43 F.4th at 668. The Seventh Circuit directs courts to consider the degree to which the worker's opportunity for profit or loss depended upon the worker's managerial skill. *Id.* When analyzing this factor, courts consider the plaintiff's ability to make choices to increase profits in light of the plaintiff's relationship with the defendant. *See Id.* at 668–69. For instance, the inability to choose more profitable shipments due to restrictions placed on time and costs imposed by the employer tends

to indicate an employer-employee relationship. *See id.* Strict pay scales and situations that restrict the worker's ability to adjust hours or to work more efficiently also tend to restrict opportunity for profit and loss and thus tend to indicate an employer-employee relationship. *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1077 (N.D. Ill. 2014).

The Court can reasonably infer from the Amended Complaint Polley's dependence on Defendants for profit or loss. Polley "was expected to remain available to respond promptly to Defendants' calls and messages whenever assignments arose" (Dkt. 20 ¶ 28). It is reasonable to infer that this constant availability imposed a restriction on Polley's ability to offer his services to others. Being on-call and available to respond if Defendants needed him, would have restricted Polley from pursuing other economic opportunities. Polley also did not advertise his services to the public, have other clients, or operate an independent business for real estate services. *Id.* ¶¶ 17–18. This factor weighs in favor of employee status.

**c. Alleged Employee's Investment**

Next, the Court considers Polley's investment. Large amounts of personal investment tend to indicate that the worker is an independent contractor. *Perez*, 55 F. Supp. 3d at 1077. Investments indicating independent contractor status "include 'large expenditures, such as risk capital, or capital investments, and not negligible items or labor itself.'" *Id.* (quoting *Lauritzen*, 835 F.2d at 1537). In *Brant,* the Seventh Circuit noted that while the plaintiff spent large amounts of money when "hauling freight . . . on the truck lease, fuel, and equipment," the investment was made with no upfront payment. *Brant,* 43 F.4th at 671. Importantly, the investment depended solely on the defendant "providing a truck, mobile computing platform, and other equipment by extending its own credit to [the plaintiff]." *Id.* at 671. The court noted that while the plaintiff could have gotten the necessary equipment to do the job without the defendant, he did not. *Id.* Despite the plaintiff

incurring costs related to his work, the worker's "disproportionately small stake in the . . . operation is an indication that [his] work is not independent of the defendants." *Id.* (quoting *Lauritzen*, 835 F.2d at 1537).

Here, the Amended Complaint alleges that "[Polley] performed field and listing-support services . . . including installing and removing signs, placing and retrieving lockboxes, delivering documents, conducting on-site checks, and acting as Defendants' on-site representative" (Dkt. 20 ¶ 15). Neither party indicates who provided the additional materials for performing these services. Polley's only alleged expense resulting from his work for Defendants' real estate operation was the use of his private vehicle, including fuel, maintenance, depreciation, and wear-and-tear (Dkt. 20 ¶ 26). Although this does show investment by Polley, these vehicle-related expenses are similar to the investment of the plaintiff in *Brant*. Like the plaintiff in that case, these costs do not show any upfront investment and do not indicate that Polley's work is not independent from Defendants. *See Brant*, 43 F.4th at 671. Polley's lack of a large investment in the operations weighs in favor of employee status, though less strongly than in other cases where it was shown that the company provided the necessary materials for completing the work. *Cf. Perez*, 55 F. Supp. 3d at 1077 ("[The business] provides insurance, vehicles, transportation expenses, and cleaning supplies.").

**d. <u>Special Skills</u>**

Facts indicating special skills weigh in favor of independent contractor status. *See Brant,* 43 F.4th at 671. "Excellence at any occupation can be said to require skills, but this inquiry is focused on specialized skills that set the independent contractor apart from other workers." *Id.*

Polley's work included "installing and removing signs, placing and retrieving lockboxes, delivering documents, conducting on-site checks, and acting as Defendants' on-site representative"

(Dkt. 20 ¶ 15). Nothing in the record indicates that these tasks required special skills that are typical of independent contractors. Therefore, this factor weighs in favor of employee status.

**e. <u>Permanency and Duration</u>**

A higher degree of permanency weighs in favor of employee status. *Perez*, 55 F. Supp. 3d at 1078. Here, the parties had an ongoing work relationship from October 2018 to September 2025 (Dkt. 20 ¶ 1). Although the relationship was ongoing, it was sporadic at times. Polley performed work for Defendants between ten and twenty hours per week, but his actual time varied based on the Defendants' needs. *Id.* ¶ 27. Despite the variance in work performed, the fact that the parties' working relationship persisted nearly seven years weighs in favor of employee status. *Cf. Lauritzen*, 835 F.2d at 1537 (finding that a seasonal worker's tendency to return to the same farm year after year indicated permanency).

**f. <u>Integral Part of Employer's Business</u>**

The last of the *Lauritzen* factors is the degree to which Polley's services were integral to Defendants' business. If the workers perform the primary work of the business, they are more likely to be deemed employees. *Perez*, 55 F. Supp. 3d at 1078. Defendants operate a real estate business (Dkt. 20 ¶ 15). Polley alleges that "[he] performed field and listing-support services . . . including installing and removing signs, placing and retrieving lockboxes, delivering documents, conducting on-site checks, and acting as Defendants' on-site representative with homeowners, tenants, buyers, contractors, and vendors." *Id.* All of these services relate to the primary work of Defendants' real estate business. Thus, the Court finds this factor weighs in favor of employee status.

All six of the factors weigh in favor of determining that Polley is an employee pursuant to the FLSA. Thus, the Court concludes that Polley has pleaded sufficient factual material to sustain a plausible claim that he was an employee.

**2. <u>Kovener-Elkins's Employer Status</u>**

Defendants next argue that Polley may not bring claims under the FLSA against Kovener-Elkins because she was not Polley's employer under the FLSA (Dkt. 24 at 9). While the Defendants recognize that there are situations in which an officer or agent of a business may be an employer under the FLSA, they argue that Polley has not pleaded sufficient factual materials in this case to plausibly show that Kovener-Elkins is an employer. *Id.* Specifically, they argue that Polley has only alleged legal conclusions, his allegations fail to show that Kovener-Elkins was aware of his complaints, and he does not specifically allege that Kovener-Elkins had any role in the decisions related to him. *Id.* Defendants argue that the Amended Complaint instead alleges only a business relationship between Polley and Elkins & Associates. *Id.*

In response, Polley points out that Kovener-Elkins is the sole owner of Elkins & Associates and personally exercised control over relevant parts of the business relationship, including Polley's work, classification, compensation, and decisions related to the alleged violations (Dkt. 25 at 3). Polley points out that the term "employer" under the FLSA is broad and includes individuals, if those individuals had control over wages and working conditions. *Id.* at 4.

As noted earlier, the term employer under the FLSA is construed expansively. *Simpkins*, 893 F.3d at 964. An individual owner or officer can be an employer under the FLSA, if that individual exerts sufficient operational control. *See Perez*, 55 F. Supp. 3d at 1075. To determine if an individual is an employer, courts look to the economic reality of the situation, which "encompasses several factors, including whether the individual: '(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Perez*, 55 F. Supp. 3d at 1075 (quoting *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F.

Supp. 2d 787, 795 (N.D. Ill. 2011)). No single factor is determinative. *Cardenas v. Grozdic*, 67 F. Supp. 3d 917, 923 (N.D. Ill. 2014). Additionally, the fact that an individual is the owner of the business is not in itself sufficient to establish that the individual is an employer. *Id.*

It is undisputed that Kovener-Elkins is the sole owner of Elkins & Associates (Dkt. 20 ¶ 10; Dkt. 22 at 3). Although that is not enough, Polley additionally alleges that Kovener-Elkins "personally assigned Plaintiff's tasks, determined where and when Plaintiff was required to travel, set job priorities, . . . directed Plaintiff's interactions with third parties," and had final authority over approval of Polley's work and whether Polley would continue to receive assignments (Dkt. 20 ¶¶ 21, 22). Importantly, Kovener-Elkins also exercised final authority over various aspects of Polley's work that directly related to the alleged violations of the FLSA, including the method of compensation, Polley's classification, and the business's pay practices. *Id.* ¶¶ 22–24. Based on these allegations, the Court finds that Polley has sufficiently pleaded that Kovener-Elkins is an employer under the FLSA.

### 3. **One Workweek Requirement**

Defendants next argue that Polley has not alleged sufficient facts to raise a plausible FLSA minimum wage claim (Dkt. 24 at 7). Defendants contend that the Amended Complaint is "solely a recitation of legal definitions and conclusions." *Id.* In support, Defendants first cite cases from other circuits in which courts dismissed FLSA claims for lacking sufficient factual material. *Id.* However, the Seventh Circuit has not explicitly ruled on the level of detail required to state a claim under the FLSA for unpaid or underpaid wages, *see Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, No. 15 C 2361, 2016 WL 2909649, at *2 (N.D. Ill. May 19, 2016), and courts in this circuit have required different levels of specificity.

Defendants then attempt to distinguish this action from *Cho v. Maru Restaurant Inc.*, 194 F. Supp. 3d 700 (N.D. Ill. 2016). In *Cho*, the district court deemed the plaintiff's FLSA claim sufficient after noting that plaintiff alleged "the time period in which she worked (July 1, 2015 to August 29, 2015), the approximate number of hours she worked per week (seventy-two), that she was always paid the same hourly wage regardless of how many hours she worked each week, and that the hourly wage that she was paid was less than the federal minimum wage of $7.25 per hour." *Id.* at 703. The court found these allegations sufficient to permit an inference that defendants have failed to comply with the FLSA. *Id.* The Defendants argue that Polley's Amended Complaint does not allege certain factual material including the amount Polley was paid, the number of hours worked, whether hours were reported, or the way the hours were reported (Dkt. 24 at 7).

In response, Polley disputes that additional factual material is necessary to survive dismissal (Dkt. 25 at 2, 3). He argues that the standard for surviving dismissal under Seventh Circuit case law requires only that a "FLSA plaintiff plausibly alleges underpayment based on patterns, estimates, and employer-controlled records." *Id.* at 2. He further contends that the Defendants' alleged failure to keep accurate records enables his claim to survive based on estimates, patterns, and the structure of compensation. *Id.* at 3.

Defendants opted to not file a reply brief.

Polley's description of the standard is incorrect. The Seventh Circuit has ruled that "a plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid." *Hirst*, 910 F.3d at 966. Nevertheless, a liberal construction of Polley's allegations shows that he clears this hurdle. In the Amended Complaint, Polley alleges that he "*routinely* worked approximately ten (10) to twenty (20) hours per week, and at times more or less," and that the compensation he

received "*routinely* resulted in pay below the federal minimum wage" (Dkt. 20 at ¶¶ 27, 29 (emphases added)). He further alleges that from 2020 through his termination in September 2025, the Defendants' mileage only compensation structure "routinely and consistently resulted in [Polley's] net pay falling below the federal minimum wage in the workweeks in which [he] performed assignments." *Id.* ¶ 30.

Polley does not have to identify a specific date or time when he was not properly compensated. *Hirst*, 910 F.3d at 966. He also does not need to provide specific facts regarding wage calculations and pay deductions. *See Delgado*, 2016 WL 1043725, at *8. Indeed, specific facts regarding wage calculations and pay deductions are usually contained within an employee's records, so Defendants are likely in a good—if not the best—position to gather the necessary documents to investigate and defend against these claims. *See, e.g.*, *Richardson v. Granite City Hotel and Resorts, LLC*, No. 14-cv-1135, 2015 WL 1944402, at *4 (S.D. Ill. April. 29, 2015). That is especially true here, where Polley alleges that the Defendants failed to maintain accurate records and, because of their poor record keeping, he cannot plead the precise number of uncompensated hours worked. These details may be fleshed out during the discovery process. In any event, Polley is not required to plead with specificity at this stage in the litigation. *See Iqbal* 556 U.S. at 678. Under the factual circumstances here, the Court finds that Polley has sufficiently pleaded factual material to make a plausible showing that he was not paid minimum wage for at least one workweek. Accordingly, Defendants' Motion to Dismiss is **denied** as to Polley's FLSA minimum wage claim.

### B. Count II: FLSA Retaliation

Defendants also argue that the FLSA retaliation claim should be dismissed (Dkt. 24 at 9). The only argument they provide for dismissing the claim is that, because Polley "has failed to

plausibly allege that activity was in scope of the FLSA," he is unable to bring a retaliation claim under the FLSA. *Id.*

Protection against retaliation under the FLSA "applies to persons even if they are not covered under the wage statute." *Mays v. Rubiano, Inc.*, 560 F. Supp. 3d 1230, 1239 (N.D. Ind. 2021). The FLSA prohibits a person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To state a claim of retaliation under the FLSA, a plaintiff must plausibly allege that the plaintiff (1) engaged in protected activity, and (2) experienced an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse employment action. *See Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018); *Mays*, 560 F. Supp. 3d at 1239. There need not be an actual violation of the FLSA in order to plead a retaliation claim. *See Sapperstein v. Hager*, 188 F.3d 852, 856–57 (7th Cir. 1999). All that is required is that Polley had a good-faith belief that there might have been a violation of the FLSA. *See id.* at 857.

Polley argues that he has properly pleaded a claim for relief for retaliation under the FLSA (Dkt. 25 at 3). In support, he cites the fact that shortly after he questioned Defendants' pay practices and his classification and submitted a W-4 form, Defendants reduced his assignments, delayed and withheld payment and ceased providing him with work assignments. *Id.* He argues that there is a "temporal proximity" between his actions and Defendants' subsequent reactions, which he contends is sufficient to create a plausible inference of causation at the pleadings stage. *Id.*

Polley's complaints to Defendants about his wages and classification constitute protected activity under the FLSA. His submission of a W-4 to the Defendants would provide a reasonable employer fair notice of the assertion of rights under the FLSA. *See Kasten v. Saint-Gobain*

*Performance Plastics Corp.*, 703 F.3d 966, 976 (7th Cir. 2012) (stating that a complaint is a protected activity "so long as a reasonable employer in [the] circumstances and armed with [the employer's] knowledge of the relevant context would have had fair notice of [the employee's] assertion of rights protected by the FLSA"). Following his complaint, Defendants reduced Polley's work and eventually ceased providing him assignments. Each of these actions is an adverse employment action. *See Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp. 2d 682, 693–94 (E.D. Wis. 2007); *Spilker v. Rock Garden Weddings & Event Venue Ctr.*, No. 26-C-315, 2026 WL 2241496, at *3 (E.D. Wis. Aug. 4, 2026).

To show causation, a plaintiff may rely on either direct evidence of a causal link or "circumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation." *Treadwell v. Office of Ill. Sec. of State*, 455 F.3d 778, 781 (7th Cir. 2006). "Circumstantial evidence . . . may include: (1) suspicious timing, ambiguous statements or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action." *Kasten*, 703 F.3d at 972–73. Here, Polley alleges that the retaliation commenced shortly after his complaints about his time sheet.

Polley argues that a temporal connection is sufficient to show causation and cites *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312 (7th Cir. 2011), for support (Dkt. 25 at 3). In *Loudermilk*, a former employee alleged retaliation when he was "fired . . . on the spot" after handing a supervisor a complaint. *Id.* at 314. "[T]iming may offer a clue to causation (or its absence) when an employee charges retaliation: a short gap may suggest a causal link, while a long one undercuts an inference of causation." *McGuire v. City of Springfield*, 280 F.3d 794, 796 (7th Cir. 2002). The Amended Complaint alleges that Polley "engaged in protected activity by questioning Defendants' pay practices, disputing his classification [as an Independent contractor],

and submitting a W-4 form . . . in order to correct his wage and tax status," and that "*[s]hortly thereafter*," the Defendants "reduced Plaintiff's assignments, delayed and withheld payment, and ceased providing further work." (Dkt. 20 at ¶¶ 33, 34). The Court finds that the allegations of temporal connection between the Defendants' adverse employment actions and Polley's complaints is sufficient to plead causation. Accordingly Defendants' Motion to Dismiss Count II: FLSA retaliation, is **denied**.

**C. <u>State Law Claims</u>**

The Amended Complaint alleges that Polley brings a claim under the Indiana Wage Payment Act and under the equitable doctrine of quantum meruit (Dkt. 20 at ¶4).

Indiana's Wage Payment Act governs current employees and previous employees who have voluntarily left their employment. *Id.* at 702 (citing Ind. Code § 22-2-5-1(b)). The Wage Payment Act governs both the frequency and the amount which an employer must pay its employees. *Hollis v. Def. Sec. Co.*, 941 N.E.2d 536, 538 (Ind. Ct. App. 2011) (citing *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002)). Plaintiff-employees who qualify under the Wage Payment Act may recover "liquidated damages, costs, and reasonable attorneys' fees where an employer fails to make payments." *Id.* (citing Ind. Code § 22-2-5-2).

Quantum meruit is a legal fiction that permits a recovery where there is no contract, but the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise. Indiana courts articulate three elements for these claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment. *Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005).

Defendants argue that Polley's Indiana Wage Payment Act claim should be dismissed because Polley has failed to exhaust his administrative remedies (Dkt. 24 at 10). Defendants point out that the Indiana Supreme Court has made clear that wage claims under the Wage *Claims* Act must be submitted to the Indiana Department of Labor for administrative enforcement and exhaustion of the administrative remedy is required before filing a lawsuit. *Id.* Defendants cite several cases that support their position. *See Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1062 (Ind. 2007); *Steele*, 766 N.E.2d at 705; *see also Quimby v. Becovic Mgmt. Grp., Inc.*, 962 N.E.2d 1199, 1200 (Ind. 2012); *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 301 (Ind. Ct. App. 2009), *trans. denied*. However, Polley does not bring a claim under the Wage Claims Act. His claim is brought under the Wage Payment Act, so this argument fails.

In his response, Polley states that he has alleged facts supporting an "alternative state-law theory arising from the same course of conduct" and "at minimum, the Court may retain supplemental jurisdiction while the federal claims proceed." (Dkt. 25 at 4).

Polley is mistaken. The Amended Complaint does not make any allegations to support a claim under the Indiana Wage Payment Act. As noted above, this Act governs current employees and previous employees who have voluntarily left their employment. We know that Polley is not a current employee, and the Amended Complaint does not allege that he voluntarily left Defendants' employment. Rather, he alleges that Defendants reduced his assignments, delayed and withheld payment, and ceased providing him work (Dkt. 20 at 3). Thereafter, he sought unemployment benefits. *Id.* In essence, Polly has plead that he was terminated. Moreover, Polley does not cite any case law to support such a claim. Accordingly, Polley fails to state a claim upon which relief may be granted, and his Indiana Wage Payment Act Claim: Count III, is **dismissed without prejudice**.

As for Polley's alternative Quantum Meruit claim (Count IV), Defendants argue that the Amended Complaint does not present a cogent theory of recovery, does not allege that Polley was not paid as agreed by the parties, and merely recites legal conclusions (Dkt. 24 at 11). Defendants are correct. The Amended Complaint does not make any allegations to support a Quantum Meruit/unjust enrichment claim. Moreover, Polley does not cite any case law to support such a claim. Accordingly, he has failed to state a claim upon which relief may be granted, and Polley's Count IV: Quantum Meruit Claim, is **dismissed without prejudice**.

## IV. CONCLUSION

The Court has liberally construed Polley's inartfully pleaded Amended Complaint. For the reasons explained above, Defendants' Motion to Dismiss (Dkt. 23) is **GRANTED in part and DENIED in part**. Polley's FLSA claims, Count I: FLSA Minimum Wage and Count II: FLSA Retaliation, have survived the initial hurdle of a motion to dismiss, so the Motion is **denied** as to these counts. Defendants' Motion is **granted** with respect to Polley's state law claims, Count III: Indiana Wage Payment Act Claim and Count IV: Quantum Meruit Claim, and these counts are **dismissed without prejudice**.

**SO ORDERED.**

Date: September 30, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ASHTON POLLEY
4010 North State Highway 7
North Vernon, IN 47265

Jeffrey Latham Beck
Beck Rocker, LLC
jbeck@beckrocker.com

Christopher Lynn Clerc
Beck Rocker LLC
cclerc@beckrocker.com